E. IT. Ewing, speeial J.,
delivered the opinion of the ■court.
This was an action of trespass guare clausum fregit, commenced before a justice of the peace of Wilson county, by Baird against Tilghman, for cutting timber on land claimed by Baird. The object of both parties was, perhaps, to try the title to the land, though that was not necessarily involved in the action. The case was taken by appeal from the magistrate’s judgment to the circuit court of Wilson county, where upon the verdict of a jury, judgment was rendered for the plaintiff below. From this judgment, defendants below appeal to this court. The case appears to have been this: The land in dispute was granted by ÍTorth Carolina, in 1789, to one Slade, under whom the Tilghmans claim. The same land was granted, in 1793, to McFarland, under whom Baird claims. The grants interfered on their respective eastern and western boundaries, for a considerable distance, to the width of sixteen poles; neither Slade, nor any one claiming under him, so far as the proof shows, has ever been in possession of any part of this strip of land, common to both grants. On the contrary, McFarland, and those claiming under him, commenced a possession of a portion of this debatable land, as early as 1808, by cultivating and fencing it, and continued that possession till the commencement of this action. Neither of the parties, nor any of those under whom they claim, have ever been in possession of that precise portion of the land from which the trees were cut, and which is part of the strip above mentioned. Flowers McGregor, *198 who owned part of tlie Slade grant in 1828, Rad Ris land.processioned and running witR tRe western “boundary of tRe grant, embraced tRe land now disputed, as also, a portion of tRe land cultivated and claimed by tRose deriving title under tRe McFarland grant. TRe claimant under the McFarland grant seems to Rave objected to this running, but seems also, to Rave spoken of acquiescing in it, and to Rave stated that Re would remove Ris fences to accord with it. Afterwards, however, and before the year 1833, (things remaining, in other respects, as they had been previously,) Flowers McGregor and McFarland being then conterminous owners, agreed to divide this strip of sixteen poles between them, and did in effect run a line north and south, at eight poles distance on either side from the respective original boundary lines of the two grants.
3STo writing was, however, entered into upon the subject. So matters remained until the death of Flowers McGregor. In the division of Ris lands, this compromise line was disregarded, and the old line- of the Slade grant again taken as the boundary (Baird, who was now owner on the McFarland side objecting.) Subsequently to 1833, Flowers McGregor was heard to speak of the compromise line, as a boundary line.
To the charge of the judge to the jury, no objection is made here. It is urged, however, for plaintiffs in error, that as the western line of the Slade grant was not uncertain (the proof making this clear) the compromise line could not be supported, as to that portion of the slip of sixteen poles, not in -actual occupation by the claimant under the McFarland grant. That at any rate, something more than the mere verbal agreement must be *199 shown, some acts or conduct showing approval of and acquiescence in the line as the boundary. To sustain this view, we are referred to the ¡cases of Nichol vs. Lytle, 4 Yerg., 456. Gilchrist vs. McGehee, 9 Yerg., 455, and other eases of the same description.
The proof certainly greatly preponderates in favor of the line ascertained by the processioning of 1828, as the true western line of the Slade grant, though there is proof on the other side, and the question was fairly left to the jury, under a correct charge by the circuit judge. This might present some difficulty, if the case depended upon it. Again, it might be a question whether parties might not establish a boundary by parol as well, where rights were uncertain, by reason of the statute of limitations, as other causes where lines were doubtful.
Waiving these questions, however, there seems to have been sufficient warrant for the verdict and judgment in another consideration, and that is, that the.plaintiff below, and those under whom he claimed, had been in actual occupation of a portion of the land common to both grants, claiming under the McFarland grant, and to the extent of its boundaries (at least till the compromise) for more than seven years consecutively previous to the commencement of the action of trespass.
The claimants under the Slade grant never had been in actual possession of any part of this common ground.
By numerous decisions of the court, this description of possession is held to give title to that portion ■ of the land, as to which the grants conflict. See as to this point, Napier vs. Simpson, 1st Tenn. Rep., 448. Talbot vs. McGavock, 1 Yerg., 262. Smith vs. McCall's *200 heirs, 2 Humph., 163. Hightower vs. Smith, 7 Yerg., 500, and Kelly vs. Hare, 1 Humph. R., 163.
Let the judgment be affirmed^